**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 15-1444**

RENEE L. MCCRAY,

        Plaintiff - Appellant,

    v.

FEDERAL HOME LOAN MORTGAGE CORPORATION; WELLS FARGO BANK, N.A.; SAMUEL I. WHITE, P.C.; JOHN E. DRISCOLL, III; ROBERT E. FRAZIER; JANA M. GANTT; LAURA D. HARRIS; KIMBERLY LANE BITT; DEENA L. REYNOLDS, Substitute Trustees; JOHN DOES, 1-20; WELLS FARGO HOME MORTGAGE, d/b/a America's Servicing Company,

        Defendants - Appellees.

Appeal from the United States District Court for the District of Maryland, at Baltimore. George L. Russell, III, District Judge. (1:13-cv-01518-GLR)

Argued: May 10, 2016          Decided: October 7, 2016

Before NIEMEYER and WYNN, Circuit Judges, and Thomas E. JOHNSTON, United States District Judge for the Southern District of West Virginia, sitting by designation.

Affirmed in part, reversed in part, and remanded by published opinion. Judge Niemeyer wrote the opinion, in which Judge Wynn joined. Judge Johnston wrote a separate opinion concurring in part and dissenting in part.

Kenzie Marie Rakes, MEYNARDIE & NANNEY, PLLC, Raleigh, North Carolina, for Appellant. Robert Harvey Hillman, SAMUEL I.

WHITE, PC, Rockville, Maryland; Michael S. Barranco, TREANOR POPE & HUGHES, P.A., Towson, Maryland, for Appellees.

_____

NIEMEYER, Circuit Judge:

In connection with a $66,500 loan secured by a deed of trust on her house, Renee McCray commenced this action for damages against the Federal Home Loan Mortgage Corporation ("Freddie Mac"); Wells Fargo Bank, N.A., and Well Fargo Home Mortgage (collectively, "Wells Fargo"); Samuel I. White, P.C. ("the White Firm"); John E. Driscoll, III, Robert E. Frazier, Jana M. Gantt, Laura D. Harris, Kimberly Lane Bitt, and Deena L. Reynolds (collectively, "Substitute Trustees"); and John Does, 1-20, alleging that, in the administration of and collection efforts on the loan, the defendants violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.; the Truth in Lending Act ("TILA"), id. § 1601 et seq., and the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 et seq. The allegations center primarily on the defendants' alleged failure to provide McCray with notices and requested information as purportedly required by these statutes.

On the defendants' motions, the district court dismissed McCray's FDCPA and TILA claims and, following discovery, granted Wells Fargo's motion for summary judgment on her RESPA claim.

On appeal, McCray contends (1) that the district court erred in concluding that the White Firm and the Substitute Trustees, who were members of that firm, were not "debt collectors," as that term is used in the FDCPA; (2) that the

3

court erred in concluding that McCray failed to allege a cause of action under TILA when she alleged that Freddie Mac, as the new owner of her loan, failed to provide her timely notice of the purchase; and (3) that the court erred in concluding that Wells Fargo, as servicer of the loan, was not required to provide McCray with notice when the deed of trust was assigned to it.

For the reasons that follow, we conclude that McCray adequately alleged that the White Firm and the Substitute Trustees were "debt collectors," as that term is used in the FDCPA. Accordingly, we reverse the order of dismissal of her FDCPA claims against them and remand for further proceedings, without suggesting whether or not those defendants violated the FDCPA. As to the TILA claims, we affirm.

I

In October 2005, McCray borrowed $66,500 from American Home Mortgage Corporation to refinance her house, giving American Home a 30-year note and a deed of trust on her home in Baltimore City, Maryland, to secure repayment of the note. At some point after McCray executed the loan documents, American Home sold the loan to Freddie Mac, and Wells Fargo was retained to service the loan.

For reasons not clear from the record, after making payments on her mortgage for more than five years, McCray disputed a monthly billing statement in June 2011 and sent Wells Fargo a written request for information about the fees and costs that it was charging and how it was maintaining the escrow account on the loan. Wells Fargo allegedly failed to respond or responded inadequately to her request and her follow-up inquiries.

Again for reasons not clear from the record, McCray stopped making payments on her mortgage after making the April 2012 payment and thereby went into default, and Wells Fargo retained the White Firm to pursue foreclosure. By letter dated September 28, 2012, the White Firm informed McCray that the firm had "been instructed to initiate foreclosure proceedings to foreclose on the mortgage on [her] property." The letter concluded with the statements: "This is an attempt to collect a debt. This is a communication from a debt collector. Any information obtained will be used for that purpose." (Capitalization and emphasis modified). A few days later, the White Firm sent McCray a more detailed notice of intent to foreclose, in which the firm advised McCray that her loan payments were currently "154 days past due" and that the amount required to cure default was $4,282.91. The notice also advised McCray of her various options.

Thereafter, several members of the White Firm were substituted as trustees on the deed of trust to facilitate foreclosure, and in February 2013, the Substitute Trustees filed an order to docket a foreclosure action in the Circuit Court for Baltimore City, which McCray has resisted. That proceeding is still pending.

Shortly after the Substitute Trustees commenced the foreclosure proceeding in state court, McCray commenced this action for damages, challenging the amount of her debt and the manner in which the defendants administered the loan. More particularly, she alleged that the defendants "continu[ed] to collect on an alleged debt without proper validation"; that the defendants did not respond to written requests for information and follow-up requests in a timely manner; that the defendants refused to provide her with all the information that she requested; that she was never given notice of the assignment of her deed of trust to Wells Fargo for purposes of servicing the loan; and that she never received notice of the alleged sale of the loan to Freddie Mac, all with the consequence that the defendants "attempted to collect an alleged debt under false, deceptive, and misleading means and stated an inaccurate character, amount and status of said debt."

Wells Fargo and Freddie Mac filed a motion to dismiss McCray's complaint or, in the alternative, a motion for summary

judgment, and the White Firm and the Substitute Trustees filed a motion to dismiss the complaint for failure to state a claim. The district court granted the motions to dismiss McCray's FDCPA and TILA claims and, with respect to her RESPA claim, granted summary judgment.

In dismissing McCray's FDCPA claim against the White Firm and the Substitute Trustees, the district court concluded that McCray had failed to allege sufficiently that they were "debt collectors" under the FDCPA. The court distinguished these defendants' role in initiating foreclosure proceedings from a role focused on collecting the debt, explaining:

> Even when a communication includes, "This is an attempt to collect a debt," it is not an attempt to collect a debt unless there is an express demand for payment and other "specific information about the debt, including the amount of the debt, the creditor to whom the debt is owed, the procedure for validating the debt, and to whom the debt should be paid." [Blagogee v. Equity Trustees, LLC, No. 1:10-CV-13 (GBL-IDD); 2010 WL 2933963,] at *5-6 [(E.D. Va. July 26, 2010)].

Applying Blagogee to the alleged facts, the court concluded that McCray had failed to "allege any facts indicating that [the White Firm and the Substitute Trustees] were engaged in any attempt to collect her debt."

In dismissing McCray's FDCPA claim against Wells Fargo and Freddie Mac, the district court concluded that those defendants

7

were not subject to liability under the FDCPA because they were "creditors, not debt collectors."

In dismissing McCray's TILA claim against Freddie Mac for failing to provide notice that it had purchased her loan, in violation of 15 U.S.C. § 1641(g), the court noted that the cause of action was not created by Congress until 2009, and the complaint, which described a 2005 loan and its sale to Freddie Mac on an unspecified date, failed to allege that the sale to Freddie Mac occurred after 2009. In addition, the court noted that, while McCray was notified in October 2011 that Freddie Mac was the owner of her loan, she failed to bring her TILA claim until May 23, 2013, beyond TILA's one-year statute of limitations.

In dismissing her TILA claim against Wells Fargo for failing to provide notice that the deed of trust had been assigned to it, the court explained that because Wells Fargo received only a "beneficial interest" as necessary to service the loan and not legal title, the assignment did "not implicate" the notification requirement in § 1641(g).

After discovery on the remaining RESPA claim against Wells Fargo, the district court granted Wells Fargo's motion for summary judgment.

From the district court's final judgment dated March 27, 2015, McCray filed this appeal, presenting three distinct issues, which we now address.

II

McCray contends first that the district court erred in concluding that her complaint failed to allege sufficient facts to establish that the White Firm and the Substitute Trustees were "debt collectors" subject to the FDCPA's regulation. She maintains that the complaint sufficiently alleged these defendants' debt collection role when it alleged that the firm is a "debt collection law firm" that employed the Substitute Trustees, and that the firm sent her a "Notice of Intent to Foreclose" with the statement, "This is an attempt to collect a debt," before initiating a foreclosure proceeding in the name of the Substitute Trustees and on behalf of Wells Fargo and Freddie Mac. She argues that these facts were sufficient to demonstrate that the White Firm and the Substitute Trustees "regularly collect[ed] or attempt[ed] to collect debts, [and] use[d] the mail to send her a letter to attempt to collect a debt," owed or due another, which qualified those defendants as "debt collectors" under the FDCPA, 15 U.S.C. § 1692a(6).

The White Firm and the Substitute Trustees contend that the district court properly concluded that McCray's complaint failed

9

to allege their status as debt collectors because "McCray failed to plead any facts indicating that [they] had made any demands for payment, or that they in any way communicated deadlines and penalties for McCray's failure to make any payment." (Emphasis added). They argue, "All of the pled actions . . . occurred in connection with the enforcement of security interests in real property," rendering them "fundamentally distinct from a debt collection activity covered under the FDCPA." They explain that a foreclosure action in Maryland is not designed "to obtain payment on an underlying debt," but rather serves the more limited role of "terminat[ing] the ownership interests of the mortgagor in the property and . . . foreclos[ing] [her] right of redemption by the trustee[s'] sale, so that the property can then be transferred free and clear of the mortgagor's interest by the secured party." They contend, therefore, that "up to the point when the actual collection of money is sought, there has been no debt collection activity undertaken." They also contend that their activity was only "incidental to a bona fide fiduciary obligation" and therefore excluded from regulation by an exception contained in the FDCPA's definition of "debt collector."

The question thus presented is whether the White Firm and the Substitute Trustees, who regularly pursue foreclosure on behalf of creditors, were acting as "debt collectors," as that

10

term is defined by § 1692a(6), when they pursued foreclosure against McCray after she defaulted on her loan.

The FDCPA defines the term "debt collector" to include generally "any person [1] who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or [2] who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6) (emphasis added).  The definition excludes "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . is incidental to a bona fide fiduciary obligation."  Id. § 1692a(6)(F)(i).

The FDCPA's definition of debt collector, however, does not include any requirement that a debt collector be engaged in an activity by which it makes a "demand for payment," as the White Firm and the Substitute Trustees claim.  They argue that the notice letters and papers they used to initiate foreclosure proceedings were somehow to be distinguished from letters amounting to actual debt collection efforts, maintaining that foreclosure papers are not an attempt to collect a debt unless, as the district court explained, they contain an "express demand for payment or specific information about her debt."  (Internal quotation marks and citation omitted).

11

As we have previously explained, however, "nothing in [the] language [of the FDCPA] requires that a debt collector's misrepresentation [or other violative actions] be made as part of an express demand for payment or even as part of an action designed to induce the debtor to pay." Powell v. Palisades Acquisition XVI, LLC, 782 F.3d 119, 123 (4th Cir. 2014) (second emphasis added). To the contrary, we concluded that, "to be actionable under . . . the FDCPA, a debt collector needs only to have used a prohibited practice 'in connection with the collection of any debt' or in an 'attempt to collect any debt.'" Id. at 124; see also Sayyed v. Wolpoff & Abramson, 485 F.3d 226, 229-34 (4th Cir. 2007); Wilson v. Draper & Goldberg, P.L.L.C., 443 F.3d 373, 375-77 (4th Cir. 2006).

In Powell, we held that a law firm's filing of an "assignment of judgment" in a debt collection action qualified as a debt collection activity that triggered the protections of the FDCPA. 782 F.3d at 120-21. Similarly, in Sayyed, we held that a motion for summary judgment filed in a debt collection action was "subject to the provisions of [the] FDCPA." 485 F.3d at 234. And in Wilson, we held that a law firm that provided notice that it was preparing foreclosure papers and that thereafter initiated foreclosure proceedings could be a debt collector as defined by the FDCPA. 443 F.3d at 374-76. Indeed, Wilson directly controls this case.

12

In Wilson, a lender had retained a law firm and one of its attorneys "to foreclose on [the plaintiff's] property due to her alleged failure to make mortgage payments." 443 F.3d at 374. The law firm and attorney wrote to the plaintiff "to announce that she was in default on her loan and that they were preparing foreclosure papers." Id. They also sent her a "validation of debt notice" pursuant to the FDCPA, which gave specific information concerning the amount of debt, the identity of the creditor, and the procedures for validating the debt. Id. at 374-75. We concluded that the law firm and the attorney were debt collectors under the FDCPA, holding that "Defendants' foreclosure action was an attempt to collect a 'debt.'" Id. at 378.

Particularly relevant to the defendants' arguments here, in Wilson we explicitly rejected the argument "that foreclosure by a trustee under a deed of trust is not the enforcement of an obligation to pay money or a 'debt,' but is [merely] a termination of the debtor's equity of redemption relating to the debtor's property." 443 F.3d at 376. We explained that the plaintiff's "'debt' remained a 'debt' even after foreclosure proceedings commenced" and that "Defendants' actions surrounding the foreclosure proceeding were attempts to collect that debt." Id. We also noted the consequence if that were not so:

13

Defendants' argument, if accepted, would create an enormous loophole in the Act immunizing any debt from coverage if that debt happened to be secured by a real property interest and foreclosure proceedings were used to collect the debt. We see no reason to make an exception to the Act when the debt collector uses foreclosure instead of other methods.

Id.

It is clear from the complaint in this case that the whole reason that the White Firm and its members were retained by Wells Fargo was to attempt, through the process of foreclosure, to collect on the $66,500 loan in default. McCray's complaint alleged that the White Firm is a "debt collection law firm" that mailed her a notice of intent to foreclose, which explicitly stated that it was attempting to collect on her debt, and that then filed a foreclosure action against her property. While her complaint referred to and described in part the notice of intent to foreclose, the defendants included a full copy of an October 2, 2012 notice as an attachment to their motion to dismiss. That notice provided:

> You have missed one or more payments on your mortgage loan or you are otherwise in default. If you do not bring the loan current, otherwise cure the default, or reach an agreement with your mortgage company to avoid foreclosure (such as a loan modification, repayment plan, or other alternative to foreclosure), a foreclosure action may be filed in court as early as 45 days from the date of this notice.

(Emphasis added). The notice also included specific loan information, such as the name of the lender, the date of

14

default, and the total amount required to cure the default. Finally, the notice included a letter detailing loan mitigation programs, which ended with the statement, "This communication is an attempt to collect a debt."

These facts, construed in the light most favorable to McCray on a motion to dismiss under Rule 12(b)(6), indeed show that the White Firm and its members were seeking repayment of a debt -- i.e., attempting to collect on a debt. See 15 U.S.C. § 1692a(6). They stated in their notice to McCray that they were pursuing foreclosure because McCray had "missed one or more payments." They noted that if McCray did not "bring the loan current . . . such as [by] repayment . . . , a foreclosure action may be filed in court." In addition, they provided McCray with the nature of default and the amount necessary to cure the default, concluding that the communication was "an attempt to collect a debt." Thus, all of the defendants' activities were taken in connection with the collection of a debt or in an attempt to collect a debt.

As to the White Firm and Substitute Trustees' argument that their actions in foreclosing on the property were "incidental to [their] fiduciary obligation" and therefore fell within the definitional exception contained in § 1692a(6)(F)(i), we also rejected that argument in Wilson, concluding that foreclosure

15

was "central" to the trustee's fiduciary obligation under the deed of trust.  Id. at 377.

The White Firm and the Substitute Trustees argue in the alternative that even if they acted as debt collectors, any violations of the FDCPA that they might have committed were not material.  But the district court did not reach this argument, and we decline to address it on appeal.

In sum, we hold that McCray's complaint adequately alleges that the White Firm and the Substitute Trustees were debt collectors and that their actions in pursuing foreclosure constituted a step in collecting debt and thus debt collection activity that is regulated by the FDCPA.

III

McCray also contends that the district court erred in dismissing her claim against Freddie Mac, asserting that Freddie Mac violated TILA, 15 U.S.C. § 1641(g), by failing to give her notice of its purchase of her loan.  Section 1641(g) provides that "not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer."  Id. § 1641(g)(1).  Congress added this provision to TILA in

16

2009. See Helping Families Save Their Homes Act of 2009, Pub. L. No. 111-22, § 404(g), 123 Stat. 1632, 1658 (2009).

The district court dismissed this claim against Freddie Mac on the ground that McCray failed to "allege any sale, transfer, or assignment of her loan to Freddie Mac after Congress amended TILA to require notice." The court concluded alternatively that because Wells Fargo informed McCray by a letter dated October 25, 2011, that Freddie Mac was the "investor" on the loan, McCray had notice of her claim as of that time and was therefore barred by the statute's one-year limitations period, see 15 U.S.C. § 1640(e), since she did not file the claim until May 2013.

McCray provides no challenge to the district court's conclusion that she failed to state her claim because she failed to allege the sale of her loan after 2009.* And with respect to the district court's alternative ruling on limitations, she argues that the October 25, 2011 letter was not part of her complaint but was attached to the defendants' motion to dismiss. Because the court ruled on the motion to dismiss without converting the motion to one for summary judgment, she maintains

_____

* Indeed, in a letter dated January 10, 2012, from Wells Fargo to McCray, which was part of the summary judgment record, Wells Fargo informed McCray that her loan was "sold on the secondary market to Federal Home Loan Mortgage Corporation, known as Freddie Mac, on November 14, 2005."

17

that it erred, failing to give her a reasonable opportunity to present her response. In her affidavit in support of her response, McCray did, however, state that she received a letter from Wells Fargo in December 2011, which again repeated the fact that "[t]he investor/noteholder for this loan is [Freddie Mac]."

Inasmuch as McCray has failed to challenge the district court's ruling that she failed to allege a transaction after the notice requirement was added in 2009, we affirm the district court's decision. See United States ex rel. Ubl v. IIF Data Solutions, 650 F.3d 445, 456 (4th Cir. 2011) ("[T]he failure of a party in its opening brief to challenge an alternate ground for a district court's ruling given by the district court waives that challenge" (quoting Rodriguez v. Hayes, 591 F.3d 1105, 1118 n.6 (9th Cir. 2010))); Sapuppo v. Allstate Floridian Ins. Co., 739 F.3d 678, 680 (11th Cir. 2014) ("When an appellant fails to challenge properly on appeal one of the grounds on which the district court based its judgment, he is deemed to have abandoned any challenge of that ground, and it follows that the judgment is due to be affirmed"). And similarly, because McCray seems to concede that at least as of December 2011, she had notice that Freddie Mac was the owner of her loan, we affirm the district court's alternative conclusion that the claim was barred by TILA's one-year statute of limitations.

18

IV

Finally, McCray contends that the district court erred in dismissing her claim against Wells Fargo for failing to give her notice of the assignment of the deed of trust to it, in violation of 15 U.S.C. § 1641(g). While the complaint alleges that Wells Fargo was assigned an interest in the deed of trust, the court dismissed McCray's claim because Wells Fargo received only a "beneficial interest, not legal title," in order to service the loan. The court concluded that such a limited assignment does not implicate § 1641(g).

On appeal, McCray concedes that "the statute is usually interpreted to mean that notice is required only when legal title to the debt obligation is transferred." See 12 C.F.R. § 1026.39(a)(1); see also 15 U.S.C. § 1641(g) (providing that, within 30 days after "the date on which a mortgage loan is sold or otherwise transferred," the creditor "that is the new owner or assignee of the debt" must make certain notifications to the borrower). She also does not challenge the district court's conclusion that Wells Fargo received a beneficial interest in the deed of trust in order to service the loan. Rather, she argues that, in addition to receiving a beneficial interest, the court could conclude that Wells Fargo also received an ownership interest based on a line in the deed of trust that reads, "The Note or a partial interest in the Note (together with this

19

Security Instrument) <u>can be sold</u>." (Emphasis added). That statement, however, does not support her claim that the note was <u>in fact</u> sold to Wells Fargo. Instead, it indicates only that the note <u>could</u> be sold. Moreover, the inference that she seeks would be inconsistent with her assertion that Freddie Mac was in fact the owner and failed to give her timely notice of its ownership.

In short, we conclude that the district court did not err in dismissing this claim.

\* \* \*

For the foregoing reasons, we conclude that McCray's complaint adequately alleges that the White Firm and the Substitute Trustees were acting as "debt collectors" as that term is defined in the FDCPA. Our conclusion, however, is not to be construed to indicate, one way or the other, whether they, as debt collectors, violated the FDCPA. We also conclude that the district court did not err in dismissing McCray's TILA claims. Accordingly, the judgment of the district court is

<u>AFFIRMED IN PART</u>,
<u>REVERSED IN PART</u>,
<u>AND REMANDED</u>.

20

JOHNSTON, District Judge, concurring in part and dissenting in part:

I write separately to dissent only from Part IV of the majority's well-reasoned opinion. In my view, McCray's *pro se* complaint, liberally construed, sufficiently states a TILA claim against Wells Fargo.

McCray sued Wells Fargo under a statutory provision that requires the new owner or assignee of a mortgage loan to notify the borrower, in writing and within 30 days of the transfer of the mortgage loan, of the pertinent details surrounding the transfer and the new owner. McCray alleges that she was not given such notice, a circumstance that understandably made the task of identifying the actual owner of the mortgage loan difficult. That task was further complicated by the fact that in this case, it appears that McCray's debt obligation (as the majority points out, the document whose transfer triggers the § 1641(g) notice provision), was uncoupled and transferred separately from her deed of trust (a document which McCray does not dispute confers only a beneficial interest insufficient on its own to trigger § 1641(g)). In general, the record does not disclose details about the various transfers of McCray's loan documents over the years. What is clear, however, is that Wells Fargo received an interest in the deed of trust in 2012 and noted that interest in the public record. McCray duly alleged

21

Wells Fargo's interest in the operative complaint. With respect to Freddie Mac, on the other hand, McCray had nothing to go on but the representations of the defendants in this case. Notably, her pleading asserts that while the "defendants claim[] Freddie Mac is the owner of Plaintiff's Promissory Note," there was nothing in the public record indicating that Freddie Mac had ever received such an interest.

Thus, while McCray's TILA claims are based on the understanding that Wells Fargo owned her deed of trust and Freddie Mac owned her promissory note, her fundamental assertion was that she did not know who owned her note because she had not been provided the requisite notice. She then attempted to cast a wide net by naming both of the entities who appeared to have some interest in her mortgage loan and alleging that neither provided her with any notice of any assignment of either her deed of trust or her promissory note. Given this state of affairs, I find the majority's conclusion that McCray asserted Freddie Mac to be the actual owner of her loan to be an unduly strict reading of McCray's *pro se* complaint.

From McCray's perspective, she knew that her deed of trust had been transferred to Wells Fargo and that the deed could be sold "together" with her note, based on the language of her deed of trust. She had no information about any transfer involving her debt obligation. Given that McCray was unaware of who

22

actually owned her note—again because she alleges that she was not provided statutorily-required notice of the note's transfer—I would draw the inference that the majority opinion does not. That is that liberally construed, McCray's complaint raises the inference that the deed and the loan were transferred together and that Wells Fargo received an interest in both. Her allegations against Freddie Mac are not inconsistent with that inference because they are equivocal at best and based on incomplete information. If Wells Fargo did not in fact receive an ownership interest, and if Freddie Mac did in fact receive such an interest prior to 2009, discovery will surely reveal those facts. At the pleading stage, however, I would find that McCray has done enough to state a plausible § 1641(g) claim and put the burden on Wells Fargo to produce the relevant documentation.

Finally, I would note the irony of dismissing a claim alleging violation of a notice-giving provision on the basis of its failure to identify, at the pleading stage, the party who failed to provide such notice. The discovery process is well-suited to accomplish this task, and under an appropriately liberal construction, McCray has done enough to open discovery's doors.

Accordingly, I respectfully dissent from the portion of the majority opinion that upholds the district court's dismissal of

McCray's TILA claim against Wells Fargo.  In all other respects,
I am pleased to concur in the majority opinion.