<u>**PUBLISHED**</u>

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 14-1171

ALETA POWELL,

Plaintiff - Appellant,

v.

PALISADES ACQUISITION XVI, LLC; FULTON FRIEDMAN & GULLACE, LLP; JOHN DOES 1-10,

Defendants - Appellees.

Appeal from the United States District Court for the District of Maryland, at Baltimore. Richard D. Bennett, District Judge. (1:13-cv-00219-RDB)

Argued: October 30, 2014          Decided: December 18, 2014

Before NIEMEYER and GREGORY, Circuit Judges, and DAVIS, Senior Circuit Judge.

Affirmed in part, vacated in part, and remanded by published opinion. Judge Niemeyer wrote the opinion, in which Judge Gregory and Senior Judge Davis joined.

**ARGUED:** Max F. Brauer, THE LAW OFFICES OF E. DAVID HOSKINS, LLC, Baltimore, Maryland, for Appellant. Megan Elizabeth Gullace, FULTON FRIEDMAN & GULLACE, LLP, Rochester, New York, for Appellees. **ON BRIEF:** E. David Hoskins, THE LAW OFFICES OF E. DAVID HOSKINS, LLC, Baltimore, Maryland, for Appellant. Cynthia L. Fulton, FULTON FRIEDMAN & GULLACE, LLP, Rochester, New York, for Appellees.

NIEMEYER, Circuit Judge:

Aleta Powell, a credit card debtor, commenced this action against Palisades Acquisition XVI, LLC, and its attorneys, Fulton Friedman & Gullace, LLP, as debt collectors, alleging violations of two provisions of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692e and § 1692f, and related state statutes. She claimed that after Palisades purportedly purchased a judgment that had been entered against her in state court, it filed an Assignment of Judgment in the action that falsely represented its ownership of the judgment and misrepresented the amount she owed.

The district court granted summary judgment to Palisades and Fulton Friedman & Gullace, concluding that the filing of the Assignment of Judgment did not qualify as debt collection activity that implicated the protections of the FDCPA and that, in any event, the misrepresentations made in the document were not material. It also concluded that Powell failed to produce sufficient evidence to support a claim under 15 U.S.C. § 1692f and the related state statutes.

On Powell's appeal, we vacate the judgment entered on Powell's FDCPA claim under 15 U.S.C. § 1692e and remand that claim. We conclude (1) that the filing of an assignment of judgment in a debt collection action qualifies as debt collection activity that triggers the protections of the FDCPA;

2

(2) that the Assignment of Judgment that Palisades filed against Powell did not falsely claim Palisades' ownership of the judgment; and (3) that the misrepresentations in the Assignment of Judgment as to the amount of the judgment and the amount of Powell's payments on the judgment were material. We also vacate the court's conditional ruling that the errors made in the Assignment of Judgment did not provide a basis for the "bona fide error defense" found in 15 U.S.C. § 1692k(c). We affirm the judgment entered on Powell's § 1692f claim and her state-law claims.

I

Powell, a resident of Baltimore, Maryland, incurred a credit card debt of $8,205.24, payable to Direct Merchants Bank, N.A., and defaulted on the debt after losing her job in 2000. The Bank assigned the debt to Platinum Financial Services Corp., which filed an action in November 2001 in the District Court of Maryland for Baltimore City ("Baltimore City District Court") to collect the debt. In response to the suit, Powell agreed to a payment schedule, subject to the entry of a consent judgment in the event of default. On June 24, 2003, after Powell defaulted again, the Baltimore City District Court entered judgment in favor of Platinum Financial in the amount of $10,497.21, which included $9,216.43 for principal and pre-judgment interest,

$1,230.78 in attorney's fees, and $50 in costs, and which provided for post-judgment interest at the statutory rate of 10%. When Platinum Financial began garnishment proceedings to collect on its judgment, Powell again agreed to make payments, and she did so until May 2005, making monthly payments totaling $2,700. She later stated that she stopped making payments because she thought she had paid off the debt.

In March 2007, Platinum Financial sold its judgment against Powell to Palisades Acquisition XV, LLC, which, on the same day, sold it to Palisades Acquisition XVI, LLC ("Palisades"). Palisades later retained the law firm of Fulton Friedman & Gullace, LLP, to help it collect the debt. Pursuing its collection effort, Fulton Friedman & Gullace entered an appearance in the debt collection action pending in the Baltimore City District Court, prepared an Assignment of Judgment, served a copy of it on Powell, and, on June 29, 2012, filed it in the pending action. The Assignment of Judgment, which included the caption of the action, indicated that it was prepared pursuant to Md. Rule 3-624, which authorizes an assignee who files an assignment of judgment to enforce the judgment in its own name. The Assignment of Judgment that Fulton Friedman & Gullace filed provided in relevant part:

> A Judgment in the above case was entered on June 24, 2003 in the amount of $10497.21 plus attorney's fees of $1230.78 and costs of $0.00. Payments totaling

4

> $0.00. PLATINUM FINANCIAL SERVICES CORP was the judgment creditor in this case. PLATINUM FINANCIAL SERVICES CORP transferred and assigned all title, rights, and interest in said judgment on or about March 5, 2007 to:
>
> > Palisades Acquisition XVI, LLC
> > 210 Sylvan Avenue
> > Englewood Cliffs, NJ 07632
>
> The Bill of Sales for said assignment are attached hereto reflecting Judgment Creditor's assignment.

The Assignment was signed by an attorney with Fulton Friedman & Gullace and included a certificate of service indicating that a copy was mailed to Powell on May 29, 2012. The last line of the paper stated, "This communication is from a debt collector."

As it turned out, the Assignment of Judgment was erroneous in two respects. First, it reported a judgment in the total amount of $11,727.99, instead of the correct amount of $10,497.21. Apparently, the preparer of the document double counted the $1,230.78 award for attorney's fees. Second, it reported that Powell had made no payments on the judgment when, in fact, she had made $2,700 in payments.

The Assignment of Judgment indicated that bills of sale reflecting the assignment of the judgment to Palisades were attached, but as the Baltimore City District Court later found, the attached bills of sale simply referenced "accounts" and were not sufficiently specific to demonstrate the assignment of Powell's judgment.

5

In response to the Assignment of Judgment, Powell filed a motion in the Baltimore City District Court to vacate the judgment on the ground of "fraud, mistake, or irregularity." At the hearing on the motion, an attorney from Fulton Friedman & Gullace acknowledged that the Assignment of Judgment that had been filed was erroneous, and he submitted an amended Assignment of Judgment to correct the errors. Nonetheless, the court vacated the judgment because the bills of sale attached to the Assignment of Judgment were insufficient to indicate Palisades' ownership and because Palisades lacked records documenting Powell's payments on the debt. The Circuit Court for Baltimore City affirmed the ruling on appeal, and the Maryland Court of Appeals denied discretionary review.

After her judgment had been vacated by the Maryland court, Powell commenced this action against Palisades and Fulton Friedman & Gullace, asserting claims under the FDCPA, 15 U.S.C. §§ 1692-1692p; the Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code Ann., Com. Law §§ 14-201 to 14-204; and the Maryland Consumer Protection Act ("MCPA"), id. §§ 13-101 to 13-501. Specifically, she alleged that the defendants violated two provisions of the FDCPA, 15 U.S.C. § 1692e and § 1692f, "by filing an assignment of judgment that overstated the amount due on her debt" and "by filing an assignment of judgment without proof of a valid assignment." She alleged further that this

6

conduct also violated the two Maryland statutes. She demanded $1,000 in statutory damages under the FDCPA and $60,000 in compensatory damages, as well as attorney's fees and costs.

On cross-motions for summary judgment, the district court entered judgment in favor of the defendants on January 29, 2014. With respect to the FDCPA claims, the court concluded that the representations that Palisades made in the Assignment of Judgment did not implicate the FDCPA because the filing of an assignment of judgment did not qualify as conduct taken "in connection with the collection of any debt," 15 U.S.C. § 1692e, or conduct taken "to collect or attempt to collect any debt," id. § 1692f. The court explained that "[f]iling an Assignment of Judgment is not an action against a consumer, but rather a request to the court that it recognize a right of the filing party." It also found that even if the FDCPA applied to the Assignment of Judgment, the misrepresentations made in it were not material. The court explained that at the time Palisades filed the Assignment of Judgment, Powell was under the mistaken "impression that she had paid her debt in full," and that "[a]ny reasonable consumer in that circumstance would have contested the Assignment regardless of whether the judgment amount was technically correct and regardless of the identity of the debt collector." The court separately concluded that "there [was] no evidence that the Defendants acted unfairly or unconscionably in

7

violation of [15 U.S.C. § 1692f]." Finally, as to her state-law claims, the court concluded that Powell had not produced evidence to show that the defendants had attempted to enforce a right with knowledge that the right did not exist, as required by the relevant state statutes.

From the final judgment, Powell took this appeal.

II

Powell contends first that the district court erred in concluding that the filing of an assignment of judgment in a debt collection action does not constitute debt collection activity that implicates the FDCPA. In reaching its conclusion, the district court considered three factors: "(1) whether the communication included a demand for payment or had the 'animating purpose' to induce payment; (2) the relationship between the parties; and (3) the purpose and context of the communication." While the court acknowledged that the relationship between the parties was that of debtor and debt collector, it found that the Assignment of Judgment did not contain a demand for payment and was not filed to induce payment. Moreover, although the court recognized that the Assignment of Judgment "was a step to ultimately collecting the debt," it nonetheless emphasized that "the Defendants would [still] have had to take separate action to collect any money

from Powell." It thus concluded that "filing the Assignment was not an action to collect a debt" and that it therefore was "not subject to the [FDCPA]." Challenging the court's conclusion, Powell argues that the standard applied by the court is not supported by the statutory language and, in any event, has been employed by other courts only to evaluate informal communications from debt collectors, such as letters or telephone calls, but not debt collectors' litigation activities.

The defendants, on the other hand, assert that the district court correctly concluded that "the Assignment was not a collection activity, because [it] contained no demand for payment and was not an action against the consumer capable of inducing payment but rather served to establish a right of the filing party with the court."

To determine whether the filing of an assignment of judgment in a debt collection action triggers application of the FDCPA, we look first to the text of the statute -- in this case, 15 U.S.C. § 1692e and § 1692f. Section 1692e prohibits debt collectors from "us[ing] any false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 U.S.C. § 1692e (emphasis added), and § 1692f prohibits debt collectors from "us[ing] unfair or unconscionable means to collect or attempt to collect any debt," id. § 1692f (emphasis added). It is apparent that nothing in this language requires

9

that a debt collector's misrepresentation be made as part of an express demand for payment or even as part of an action designed to induce the debtor to pay. Cf. Gburek v. Litton Loan Servicing LP, 614 F.3d 380, 385 (7th Cir. 2010) (noting "that a communication need not make an explicit demand for payment in order to fall within the FDCPA's scope" and that "a communication made specifically to induce the debtor to settle her debt will be sufficient to trigger the protections of the FDCPA" (emphasis added)). But see Grden v. Leikin Ingber & Winters PC, 643 F.3d 169, 173 (6th Cir. 2011) ("[F]or a communication to be in connection with the collection of a debt, an animating purpose of the communication must be to induce payment by the debtor"). Rather, to be actionable under these provisions of the FDCPA, a debt collector needs only to have used a prohibited practice "in connection with the collection of any debt" or in an "attempt to collect any debt," a standard significantly broader than that employed by the district court.

The defendants do not take issue with the fact that the Assignment of Judgment filed in the Baltimore City District Court misrepresented the amount of the judgment and the amount of payments made toward its satisfaction; indeed, they pleaded that the misrepresentation was an unintentional clerical error. Rather, they argue that because of its purpose and function, an assignment of judgment is not filed "in connection with the

10

collection of any debt," nor as an "attempt to collect any debt." To address that argument, we turn to the nature and role of the Assignment of Judgment filed in the Baltimore City District Court.

After Powell defaulted on her credit card debt, Platinum Financial filed an action in the Baltimore City District Court to collect the debt. Following Powell's agreement to make payments and her subsequent default on that agreement, the Baltimore City District Court entered a judgment in the action against Powell, dated June 24, 2003. When Platinum Financial sought to enforce the judgment through garnishment proceedings under Md. Rule 3-645, Powell yet again agreed to make payments, deferring further debt collection efforts. After she defaulted yet again, however, Platinum Financial sold the judgment to Palisades, which substituted itself as the party plaintiff in the action by filing the Assignment of Judgment under Md. Rule 3-624. That Rule provides that "[w]hen an assignment [of judgment] is filed, the judgment may thereafter be enforced in the name of the assignee to the extent of the assigned interest." Md. Rule 3-624. Thus, in the debt collection action filed against Powell in the Baltimore City District Court, a consent judgment was entered, a writ of garnishment was entered, and the Assignment of Judgment was filed. All were steps taken to collect Powell's debt. More particularly, once Palisades

11

filed the Assignment of Judgment, it was able to step into Platinum Financial's shoes and enforce the judgment in its own name by pursuing various mechanisms authorized by the Maryland Rules, such as obtaining a writ of execution under Md. Rule 3-641 or a writ of garnishment under Md. Rule 3-645. See Maryland Rules Commentary Rule 2-624 (4th ed. 2014) (describing the purpose and effect of Md. Rule 2-624, the analogous rule for state Circuit Courts).

Thus, it can hardly be disputed that when a person files an assignment of judgment in a debt collection action so as to be able to execute on the judgment, the person has taken action in connection with the collection of the judgment debt or as part of an attempt to collect the judgment debt.

This inevitable conclusion is further reinforced by the factual context of the actions taken by Palisades in this case. First, Palisades was in the business of collecting debts, and it purchased the judgment in this case pursuant to that business purpose. Thus, when Palisades filed the Assignment of Judgment and served a copy on Powell, it included on the document, "This communication is from a debt collector." Moreover, counsel for Palisades stated in his deposition that the company thought it had "found some recoverable asset" and so decided to pursue "collection procedures [on the judgment] against Ms. Powell." To that end, Fulton Friedman & Gullace entered its appearance in

12

the Baltimore City District Court action, filed the Assignment of Judgment, and served a copy on Powell.

In reaching its contrary conclusion, the district court emphasized that the filing of an assignment of judgment "simply preserves the rights of the assignee by establishing [that it is] the rightful owner of a judgment." This characterization, however, was too cramped and overlooked the crucial role that the filing of an assignment of judgment plays in giving the assignee access to court-sanctioned enforcement procedures. Indeed, while the district court recognized that "filing the Assignment was a step to ultimately collecting the debt," it nonetheless concluded that such a filing was not itself done to collect a debt because "the Defendants would have had to take separate action to collect any money from Powell." Such reasoning, however, would exclude a large range of collection activities from the FDCPA's protections, including activity that we have already recognized as falling within the purview of the statute. For example, in Sayyed v. Wolpoff & Abramson, 485 F.3d 226, 234 (4th Cir. 2007), we held that a motion for summary judgment filed in a debt collection action was "subject to the provisions of [the] FDCPA." It would be incongruous now to hold that an assignment of judgment filed in a debt collection action is not similarly subject to the FDCPA, given that a debt collector who obtains a judgment through a successful summary

13

judgment motion stands in exactly the same position as a debt collector who files an assignment of judgment. Both have the right to collect on their judgments, and both must take additional steps to do so.

Accordingly, we conclude that the district court erred in dismissing Powell's FDCPA claims based on its holding that the filing of an assignment of judgment is not debt collection activity.

III

Powell contends that the district court also erred in concluding that the defendants' misrepresentations in the Assignment of Judgment were not material. She argues that the defendants falsely represented (1) that Palisades was the owner of the judgment, and (2) both the amount of the judgment and her payments on it. She maintains that these misrepresentations were material.

As to the first alleged misrepresentation, we conclude that the record clearly shows that the judgment against Powell had indeed been assigned by Platinum Financial to Palisades and that the defendants' representation of this fact was therefore not false. To be sure, the Baltimore City District Court found that Palisades failed adequately to document the assignment in the proceeding before that court, since Palisades attached only

14

generic bills of sale that were not specific as to Powell's debt. But Palisades has rectified that problem in this litigation, providing the relevant records that show that Powell's judgment was one of the many "accounts" that Platinum Financial assigned to Palisades in March 2007.

Powell argues nonetheless that the doctrine of collateral estoppel requires us to conclude that Palisades lacked a valid assignment and was not the true owner of the judgment. Collateral estoppel, however, "only bars relitigation of issues actually resolved in a previous suit." Bethel World Outreach Ministries v. Montgomery Cnty. Council, 706 F.3d 548, 554 n.2 (4th Cir. 2013) (citing Colandrea v. Wilde Lake Community Ass'n, 761 A.2d 899, 907 (Md. 2000)). In the collection action, the Baltimore City District Court held only that Palisades had failed to produce records documenting the assignment, not that there had been no assignment to Palisades at all. Therefore, the district court in this case correctly ruled against Powell on her claim that the defendants falsely represented Palisades' ownership of the judgment.

On the second alleged misrepresentation, it is undisputed that the original Assignment of Judgment inaccurately reported both the amount of the judgment and the amount of Powell's payments toward satisfaction of it. The district court nonetheless held that the false representation did not violate

15

15 U.S.C. § 1692e because it was not material, emphasizing both that "it appears beyond doubt that on May 29, 2012, Powell owed significantly more . . . than the amount of the judgment stated" due to the accrual of post-judgment interest and that "the least sophisticated consumer who [like Powell] thought no debt was owed at all would not reasonably act differently based on whether the judgment amount was stated with exact precision."

"Whether a communication is false, misleading, or deceptive in violation of § 1692e is determined from the vantage of the 'least sophisticated consumer,'" evaluating how that consumer "would interpret the allegedly offensive language." Russell v. Absolute Collection Servs., Inc., 763 F.3d 385, 394-95 (4th Cir. 2014). A logical corollary of the least sophisticated consumer test is that false, deceptive, and misleading statements must be material to be actionable. See Donohue v. Quick Collect, Inc., 592 F.3d 1027, 1033 (9th Cir. 2010) ("[F]alse but non-material representations are not likely to mislead the least sophisticated consumer and therefore are not actionable under §§ 1692e or 1692f"); Miller v. Javitch, Block & Rathbone, 561 F.3d 588, 596 (6th Cir. 2009); Hahn v. Triumph P'ships, 557 F.3d 755, 758 (7th Cir. 2009) ("A statement cannot mislead unless it is material, so a false but non-material statement is not actionable"); see also Warren v. Sessoms & Rogers, P.A., 676 F.3d 365, 374 (4th Cir. 2012) ("[C]ourts have generally held

16

that violations grounded in 'false representations' must rest on material misrepresentations"); Lembach v. Bierman, 528 F. App'x 297, 303 (4th Cir. 2013) (per curiam) ("[T]o plead a claim of false representation under the FDCPA, the party must show that the representations are material").

The materiality requirement limits liability under the FDCPA to genuinely false or misleading statements that "may frustrate a consumer's ability to intelligently choose his or her response." Donohue, 592 F.3d at 1034; see also Hahn, 557 F.3d at 758 ("The statute is designed to provide information that helps consumers to choose intelligently . . ."). Thus, only misstatements that are important in the sense that they could objectively affect the least sophisticated consumer's decisionmaking are actionable. See Black's Law Dictionary 1124 (10th ed. 2014) (defining "material"); cf. TSC Indus., Inc. v. Northway, Inc., 426 U.S. 438, 449 (1976) ("An omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote," even if "disclosure of the omitted fact would [not] have caused the reasonable investor to change his vote" (emphasis added)). In assessing materiality, "we are not concerned with mere technical falsehoods that mislead no one." Donohue, 592 F.3d at 1034. For example, where a demand letter misstates interest as principal but accurately states the total amount

17

owed, such a technical error is not material. See Hahn, 557 F.3d at 757. Similarly, a de minimis misstatement of the total amount owed might not be actionable, although we need not determine the threshold here.

In this case, the Assignment of Judgment falsely stated that the judgment against Powell was "in the amount of $10497.21 plus attorney's fees of $1230.78 and costs of $0.00," for a total of $11,727.99. It also erroneously stated that Powell had made no payments toward satisfaction of this judgment. The amended Assignment of Judgment corrected these errors, stating instead that the judgment was for "$9,216.43 plus attorney's fees of $1,230.78 and costs of $50.00." It also stated that Powell had made $2,700 in payments. The difference between the erroneous judgment total of $11,727.99 and the correct judgment total of $10,497.21 and the erroneous statement of no payments and $2,700 in payments was $3,930.78. This overstatement -- more than 50 percent -- was material under any standard.

The fact that Powell mistakenly thought that she had paid off the debt in full does not render the false representation immaterial. The district court presumed that an unsophisticated consumer in Powell's position would not "act differently based on whether the judgment amount was stated with exact precision." (Emphasis added). But the least sophisticated consumer who previously believed that she had paid her debt in full could,

18

upon receiving a copy of an assignment of judgment, be led to realize that she did indeed have a debt outstanding. And when that assignment contained an overstatement in excess of 50 percent, the least sophisticated consumer could be led to decide to pay far more than she otherwise would have paid. Moreover, even were we to assume the contrary, the inquiry is not whether the least sophisticated consumer would have acted differently upon receiving Palisades' Assignment of Judgment. Instead, it is whether the information would have been important to the consumer in deciding how to respond to efforts to collect the debt. Given the importance of the figures that were inaccurately reported in the Assignment of Judgment and the degree to which they were misstated, the misrepresentations here easily satisfy that test.

Accordingly, we conclude that the district court erred in its materiality conclusion with respect to Powell's § 1692e claim.

IV

While Powell's claim under § 1692f was based on the same facts advanced to support her § 1692e claim, the district court granted summary judgment to the defendants on the § 1692f claim after concluding that "there [was] no evidence that the Defendants acted unfairly or unconscionably in violation of

19

[§ 1692f]." Powell has not challenged this separate ruling on appeal, and therefore it remains part of the judgment that we affirm. See United States ex rel. Ubl v. IIF Data Solutions, 650 F.3d 445, 456 (4th Cir. 2011) ("'[T]he failure of a party in its opening brief to challenge an alternate ground for a district court's ruling given by the district court waives that challenge'" (quoting Rodriguez v. Hayes, 591 F.3d 1105, 1118 n.6 (9th Cir. 2010))); Sapuppo v. Allstate Floridian Ins. Co., 739 F.3d 678, 680 (11th Cir. 2014) ("When an appellant fails to challenge properly on appeal one of the grounds on which the district court based its judgment, he is deemed to have abandoned any challenge of that ground, and it follows that the judgment is due to be affirmed").

V

Finally, with respect to Powell's claims under the MCDCA and the MCPA, we affirm the judgment of the district court. Powell alleged that the defendants violated a provision of the MCDCA that specifies that "[i]n collecting or attempting to collect an alleged debt a collector may not . . . [c]laim, attempt, or threaten to enforce a right with knowledge that the right does not exist." Md. Code Ann., Com. Law § 14-202(8) (emphasis added). And her MCPA claim relies on the fact that a

violation of the MCDCA is a per se violation of the MCPA. <u>See</u> <u>id.</u> § 13-301(14)(iii).

Unlike the FDCPA, the MCDCA contains a "with knowledge" element, which Powell did not establish. <u>See</u> <u>Spencer v. Hendersen-Webb, Inc.</u>, 81 F. Supp. 2d 582, 595 (D. Md. 1999) (interpreting § 14-202(8) as requiring proof "that the Defendants either had actual knowledge that their asserted claims were invalid or [that they] acted with reckless disregard as to the validity of the claims"). Thus, the district court correctly concluded that, regardless of the errors in the amounts listed in the Assignment of Judgment, the undisputed evidence shows that "when the Defendants filed the Assignment, . . . they legitimately believed they had the legal right to do so." Because we agree with the district court that "the Defendants did not attempt to enforce a right with knowledge or reckless disregard as to the non-existence of that right," we affirm its judgment on Powell's state-law claims.

VI

In sum, while we affirm the summary judgment on the § 1692f claim and the state-law claims, we vacate the summary judgment granted to the defendants on the § 1692e claim, based on our conclusions (1) that the Assignment of Judgment was debt collection activity implicating the FDCPA and (2) that the

21

misrepresentations in the Assignment of Judgment were material. We remand the § 1692e claim for consideration of the defendants' "bona fide error defense" and any other remaining factual questions. While the bona fide error defense was pleaded, it was not a basis of the district court's judgment and therefore was not presented to us on appeal.

The bona fide error defense allows a defendant to avoid liability by "show[ing] by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). While the district court acknowledged that the defendants' error in this case was a "clerical error," it nonetheless indicated that the defense was inapplicable because the "affirmative defense does not apply to errors of law" and "the Defendants made an error of Maryland law as to what amounts are included in a judgment." Yet, there is no evidence in the record to support the district court's characterization of the defendants' overstatement of the judgment amount as an error of law. To the contrary, the record suggests that Palisades made a transcription error. Moreover, the lawyer for Palisades who filed the Assignment of Judgment testified at his deposition that the transcription error was not known to him and had been made by a paralegal. The commission of such errors, if

22

factually established, is an issue of fact, not a question of law. On remand, the court should give the defendants an opportunity to develop the defense and the parties an opportunity to establish any other matter necessary to resolve the FDCPA claim.

Accordingly, we vacate the summary judgment entered in favor of the defendants on Powell's § 1692e claim and remand that claim, and we affirm the summary judgment entered in favor of the defendants on Powell's § 1692f claim and her state-law claims.

<u>AFFIRMED IN PART,</u>
<u>VACATED IN PART,</u>
<u>AND REMANDED</u>