*Larry S. Chavis, et al. v. Blibaum Associates, P.A.*, No. 334, Sept. Term, 2019; *Bryione K. Moore v. Peak Management LLC*, No. 528, Sept. Term 2019. Opinion filed on July 2, 2020, by Berger, J.

## DEBT COLLECTION – MCDCA– METHODS– AMOUNT OF DEBT

The MCDCA may be used by a debtor to challenge methods of debt collection. A debtor may not use the MCDCA to challenge the amount of a debt, which the creditor had a right to collect.

## DEBT COLLECTION – MCDCA – WRIT OF GARNISHMENT

A creditor does not violate the MCDCA, § 14-202(8) of the Commercial Law Article, by using wage garnishment to collect the filing fee for a writ of garnishment.

## DEBT COLLECTION – MCDCA – RETROACTIVITY

The 2018 amendments to the MCDCA, which added § 14-202(11) to the Commercial Law Article, do not apply retroactively. There is a presumption that a statute operates prospectively, unless there is clear legislative intent otherwise.

## CLASS ACTION CERTIFICATION – HEARING REQUIREMENT

A trial court is not obligated to grant the moving party a hearing when it files a second motion for class certification, following the denial of the first.

Circuit Court for Baltimore County
Case No. 03-C-18-010602
Circuit Court for Baltimore City
Case No. 24-C-17-000033

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

Nos. 334, 528

September Term, 2019

_____

LARRY S. CHAVIS, ET AL.

v.

BLIBAUM ASSOCIATES, P.A.

_____

BRYIONE K. MOORE, ET AL.

v.

PEAK MANAGEMENT LLC

_____

Berger,
Arthur,
Gould,

JJ.

_____

Opinion by Berger, J.

_____

Filed: July 2, 2020

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

This appeal arises out of two consolidated cases from the Circuit Court for Baltimore City and the Circuit Court for Baltimore County involving the collection activities of two judgment creditors. Appellants are residential tenants who defaulted on their leases with their landlord, Appellee, Peak Management LLC ("Peak"). Peak hired Blibaum & Associates ("Blibaum"), Appellee, which sought to collect on the judgments entered against the tenants.[1] Appellants challenged the debt collection activities of Peak and Blibaum in separate actions in Baltimore City and Baltimore County. Appellants sought damages for violations of the Maryland Consumer Debt Collection Act ("MCDCA"), the Maryland Consumer Protection Act ("MCPA"), as well as declaratory and injunctive relief.

On appeal, Appellants present the following issues for review, which we rephrase in accordance with the consolidation of the two cases:

> I. Whether the circuit court erred when it dismissed Appellants' claims under the Maryland Consumer Debt Collection Act.
>
> II. Whether the circuit court erred when it dismissed Appellants' claims under the Maryland Consumer Protection Act.
>
> III. Whether the 2018 Amendments to the Maryland Consumer Debt Collection Act apply retroactively.
>
> IV. Whether the circuit court erred when it denied Appellants' Second Motion for Class Certification.

---

[1] Although we collectively refer to the tenants as "Appellants" throughout this Opinion, we recognize that not all Appellants are the same in both cases.

V.       Whether the circuit court erred when it denied Appellants' request for attorney's fees pursuant to the Maryland Consumer Protection Act.

For the reasons explained herein, we hold that neither the Circuit Court for Baltimore City nor the Circuit Court for Baltimore County erred in dismissing Appellants' MCDCA or MCPA claims. Additionally, the Circuit Court for Baltimore City did not err in finding that the 2018 Amendments to the MCDCA did not apply retroactively. In light of our holding that Appellees did not violate the MCDCA or the MCPA, we need not address whether the Circuit Court for Baltimore County erred in denying Appellants' request for attorney's fees.

**FACTS AND PROCEEDINGS**

Although we have consolidated both appeals into one opinion, we shall outline the procedural history of both cases separately. Tenants Bryione Moore, Albert Grantham, Patricia Grantham, Sharone Crowell, and Larry S. Chavis defaulted on their residential leases with Peak. Peak hired Blibaum to obtain judgments against the tenants for damages caused by the breaches of their leases. Blibaum obtained judgments against the tenants, which they failed to satisfy. Blibaum, therefore, initiated collection activities against the tenants, which included filing and obtaining writs of garnishments. Blibaum sought to collect the fee that it incurred for filing the writs of garnishment, as well as post-judgment interest in the amount of 10%. Chavis and Grantham satisfied the judgments obtained against them in full. Moore and Crowell did not satisfy the judgments entered against them.

2

The tenants filed a lawsuit against Peak Management in the Circuit Court for Baltimore City, seeking damages for the debt collection activities by Peak. In their First Amended Class Action Complaint, which was filed on March 24, 2017, the tenants sought declaratory and injunctive relief, damages for violations of the MCDCA, Md. Code (1975, 2013 Repl. Vol.), § 14-202(8), of the Commercial Law Article ("CL"), damages and attorney's fees for violations of the Maryland Consumer Protection Act ("MCPA"), CL § 13-301 et. seq., as well as restitution in the amount of the overpayments made to Peak. The tenants' primary contention was that Blibaum's utilization of a 10% post-judgment interest rate was contrary to Maryland law, which authorizes a post-judgment interest rate of 6% for the collection of rent of residential premises.

On April 19, 2017, the Honorable Barry Williams dismissed both the MCDCA and the MCPA counts against Peak. Thereafter, the tenants filed a Fourth Amended Complaint on May 1, 2018, which added claims for permanent injunctive relief, a new MCPA claim based on CL § 13-303(1) and a claim, pursuant to CL § 15-605, that Peak was not entitled to collect a fee in order to file a writ of garnishment. Following a motion to dismiss filed by Peak, the new claims under the MCPA and CL § 15-605 were dismissed by the Honorable Michael DiPietro. Judge DiPietro additionally denied the tenants' request for the entry of a declaratory judgment, permanent injunction, and an order for restitution.

The tenants filed their first Motion for Class Certification on May 14, 2018. The only remaining count at that time was an action for unjust enrichment. Following a hearing, the Honorable Videtta A. Brown denied the motion on September 10, 2018. In an effort to resolve the concerns expressed by the court when it denied the first motion, the tenants

3

subsequently filed a Second Motion for Class Certification that included the deposition testimony of Gary Blibaum. The circuit court denied the second motion for class certification without a hearing on February 6, 2019. Both Peak and the tenants filed cross-motions for summary judgment, which were considered by the Honorable Julie R. Rubin. The circuit court granted judgment in favor of Peak with respect to Moore and Crowell's unjust enrichment claims. The court further entered judgment in favor of Albert Grantham, Patricia Grantham, and Larry S. Chavis with respect to their claims of restitution. The judgments were entered on May 3, 2019 and this timely appeal was filed on May 7, 2019.

The second of these consolidated cases involves the following undisputed facts. Tenants Larry S. Chavis, Patricia Grantham, Laronda T. Green, and Cassandra J. Reid defaulted on their residential leases with Peak. Blibaum was retained by Peak to file claims against the tenants for breach of contract, seeking damages caused by the breaches. Blibaum obtained judgments against the tenants, on behalf of Peak, which included a 10% pre-judgment interest rate. When the tenants failed to satisfy the judgments entered against them, Blibaum began to garnish their wages. Blibaum utilized a 10% post-judgment interest rate when calculating the amount the tenants owed on the judgments.

On October 22, 2018, the tenants filed a Complaint against Blibaum in the Circuit Court for Baltimore County, similarly alleging violations of the MCDCA and requesting attorney's fees pursuant to the MCPA. Blibaum filed a motion to dismiss the complaint and requested a hearing. While the motion was pending, the tenants filed their First Amended Class Action Complaint on January 4, 2019. Blibaum filed a motion to dismiss the First Amended Class Action Complaint and requested a hearing. Following a hearing

4

on the motion to dismiss, the Honorable Paul J. Hanley granted Blibaum's motion to dismiss the complaint in its entirety in an order dated April 11, 2019.

The core of Appellants' arguments on appeal is based on Appellees charging the incorrect post-judgment rate pursuant to Md. Code (1974, 2013 Repl. Vol.), § 11–107, of the Courts and Judicial Proceedings Article ("CJ"). Three related cases are currently pending in Federal Court and are relevant to this issue on appeal. *See Amber Ben-Davies v. Blibaum & Associates P.A.*, CCB-16-2783 (D. Md. 2019); *Bryione K. More v. Blibaum & Associates, P.A.*, CCB-16-3546 (D. Md. 2019); *Larry Chavis v. Blibaum & Associates, P.A.*, CCB-17-2220 (D. Md. 2019). The U.S. District Court for the District of Maryland certified the following question to the Maryland Court of Appeals regarding the proper post-judgment interest rate:

> Is the legal rate of post-judgment interest on a judgment awarded in a breach of contract action where the underlying contract is a residential lease ten percent (10%)[,] as stated in [CJ] § 11–107(a)[,] or is it six percent (6%)[,] as stated in [CJ] § 11–107(b), which states that it is applicable to 'a money judgment for rent of residential premises,' where the judgment in the breach of contract action does not specifically delineate what portion, if any, of the judgment was awarded for unpaid rent?

*Ben-Davies v. Blibaum & Assocs., P.A.*, 457 Md. 228, 232–33 (2018). The Court of Appeals explained that "under Md. Code Ann., Cts. & Jud. Proc. (1974, 2013 Repl. Vol.) ("CJ") § 11–107, different post-judgment interest rates apply to different types of judgments." *Id.* at 231. Moreover, "[g]enerally, under CJ § 11–107(a), except as provided otherwise, a post-judgment interest rate of 10% applies to all judgments. Meanwhile, under CJ § 11–107(b), a post-judgment interest rate of 6% applies to 'money judgment[s] for rent

5

of residential premises[.]'" *Id*. Blibaum and Peak argued that "the plain language of CJ § 11–107(b) demonstrates that it does not apply to judgments in actions for breach of contract, even if the damages include rental payments under a lease." *Id*. at 244. The Court of Appeals agreed with the Tenants' reading of CJ § 11-107(b) and held the following:

> Here, we conclude that, where a landlord sues a tenant for breach of contract based on a residential lease, and the trial court enters judgment in the landlord's favor against the tenant and the judgment includes amounts for unpaid rent and other expenses, a post-judgment interest rate of 6% applies to the judgment pursuant to CJ § 11–107(b).

*Id.* at 265.

We shall add additional facts as they become relevant to the issues on appeal.

## I.     MCDCA Claims.

Appellants allege that Blibaum and Peak violated the MCDCA, CL § 14-202(8), for their collection of two "unauthorized charges." First, Appellants argue that it was a violation of the MCDCA to collect 10% post-judgment interest when the legal rate was 6%.[2] Second, Appellants contend that Appellees violated the MCDCA by collecting the filing fees associated with obtaining writs of garnishments by adding those fees to the amounts it sought to collect through the garnishments.

---

[2] Appellants in Case No. 334 additionally challenge Blibaum's utilization of a 10% pre-judgment interest rate. We agree with Appellants, that the legal rate of pre-judgment interest in Maryland is 6%, not 10%. *Harford Cty. v. Saks Fifth Ave. Distribution Co.*, 399 Md. 73, 96 (2007) (holding that "pre-judgment interest shall be calculated at the legal rate of six percent per annum."). We undertake the same analysis for both the collection of pre-judgment and post-judgment interest as it relates to the MCDCA.

Both the Circuit Court for Baltimore County and the Circuit Court for Baltimore City granted motions to dismiss the Appellants' MCDCA and MCPA claims. "A trial court may grant a motion to dismiss if, when assuming the truth of all well-pled facts and allegations in the complaint and any inferences that may be drawn, and viewing those facts in the light most favorable to the non-moving party, 'the allegations do not state a cause of action for which relief may be granted.'" *Sutton v. FedFirst Fin. Corp.*, 226 Md. App. 46, 73 (2015) (quoting *Latty v. St. Joseph's Soc. of Sacred Heart, Inc.*, 198 Md. App. 254, 262–63 (2011)). This Court reviews the grant of a motion to dismiss *de novo*. *Advance Telecom Process LLC v. DSFederal, Inc.*, 224 Md. App. 164, 173 (2015). "We will affirm the circuit court's judgment 'on any ground adequately shown by the record, even one upon which the circuit court has not relied or one that the parties have not raised.'" *Id.* at 174 (quoting *Monarc Constr., Inc. v. Aris Corp.*, 188 Md. App. 377, 385 (2009)).

### A. Collection of 10% post-judgment and pre-judgment interest was not a violation of the MCDCA § 14-202(8).

We shall first address whether the Appellees violated the MCDCA by collecting post-judgment and pre-judgment interest at a rate of 10%, when the legal rate is 6%. CL § 14-202(8) provides that "[i]n collecting or attempting to collect an alleged debt a collector may not . . . [c]laim, attempt, or threaten to enforce a right with knowledge that the right does not exist[.]"[3] "The MCDCA, and in particular § 14–202, is meant to proscribe

---

[3] The "knowledge" requirement of CL § 14-202(8) "has been held to mean that a party may not attempt to enforce a right with actual knowledge or with reckless disregard as to the falsity of the existence of the right." *Allen v. Bank of Am., N.A.*, 933 F. Supp. 2d 716, 729 (D. Md. 2013) (quoting *Kouabo v. Chevy Chase Bank, F.S.B.,* 336 F. Supp.2d 471, 475 (D. Md. 2004)).

certain *methods* of debt collection and is not a mechanism for attacking the validity of the debt itself." *Fontell v. Hassett*, 870 F. Supp. 2d 395, 405 (D. Md. 2012). "A collector who violates any provision of this subtitle is liable for any damages proximately caused by the violation, including damages for emotional distress or mental anguish suffered with or without accompanying physical injury." CL § 14-203.

Appellants rely heavily on *Allstate Lien & Recovery Corp. v. Stansbury*, 219 Md. App. 575, 577 (2014) and *Mills v. Galyn Manor Homeowner's Ass'n, Inc.*, 239 Md. App. 663, 676 (2018), *aff'd sub nom.*, *Andrews & Lawrence Prof'l Servs., LLC v. Mills*, 467 Md. 126 (2020), in support of their argument that Appellees collected or attempted to collect two "unauthorized charges." In *Allstate*, *supra*, 219 Md. App. at 577, a vehicle repair shop placed a "garageman's lien" on a vehicle that it repaired, when the owner could not pay for the repairs in full. The repair shop included a $1,000 processing fee in the lien amount that the owner was required to pay in order to redeem his vehicle. *Id.* The vehicle owner alleged that the processing fees were not authorized by statute, and therefore, the repair shop violated the MCDCA by including the processing fee in the lien amount. *Id.* The repair shop argued that it had an "absolute legal right to execute upon the lien and sell the vehicle because of the garageman's lien on the vehicle, even if a portion of the lien amount [was] disputed." *Id.* at 590. The repair shop further argued that "the MCDCA addresses the method of debt collection, as opposed to a challenge to the amount of the underlying debt." *Id.*

This Court first determined that CL § 16-202, which authorizes a garageman's lien, did not authorize including processing fees as part of the lien amount. We next addressed whether the inclusion of those fees constituted a violation of the MCDCA. We rejected the repair shop's reliance on *Fontell*, *supra*, 870 F. Supp. 2d at 406, where a homeowner challenged the validity of an underlying homeowner's association debt under the MCDCA. The *Fontell* Court held that the MCDCA is "meant to proscribe certain *methods* of debt collection and is not a mechanism for attacking the validity of the debt itself." *Id.* at 405. This Court observed that *Fontell* was unhelpful to the repair shop, because the vehicle owner was not disputing the underlying debt, but rather the "method of collecting the debt, i.e., front-loading processing fees and including those fees as part of the lien." *Allstate*, *supra*, 219 Md. App. at 530. Accordingly, we held that because the repair shop did not have the right to include the processing fees as part of the lien amount, the vehicle owner could recover under the MCDCA. *Id.* at 591.

More recently in *Mills*, *supra*, 239 Md. App. at 676, we considered whether a Homeowner's Association violated the MCDCA. The homeowners challenged the Association's right to file liens against them because the statute of limitations had expired. Additionally, the homeowners alleged that the Association levied fines against them that were unauthorized by the Association's governing documents. We held that "the Homeowners may pursue a MCDCA claim because they challenge [the Association's] methods in filing liens." Further, we remanded the case to the trial court to determine whether the fines levied against the homeowners "are the type of 'unauthorized' charges

9

covered by the statute." By "unauthorized charges," we addressed charges that the Association did not have the *right* to assess at all.

Critical to both the *Allstate* and *Mills* holdings was that the creditors sought to collect fees that it did not have the *right* to collect. Neither holding suggests that a debtor may use the MCDCA to challenge the *amount* of a debt, which the creditor had a *right* to collect. Indeed, there is no dispute that Appellees had a right to collect pre-judgment and post-judgment interest. The only dispute pertains to the amount of pre-judgment and post-judgment interest. Accordingly, we affirm the judgments of both the Circuit Court for Baltimore City and the Circuit Court for Baltimore County with respect to dismissal of Appellants' MCDCA claims.[4]

---

[4] Relying on *Mills*, *supra*, 239 Md. App. at 679 and *Allstate*, *supra*, 219 Md. App. 591, the United States District Court for the District of Maryland issued an interlocutory order denying summary judgment, in connection with similar claims asserting violations of the MCDCA. *Ben-Davies v. Blibaum & Assocs., P.A.*, 421 F. Supp. 3d 94, 99-100 (D. Md. 2019). We disagree with the Court's interpretation of our holdings in *Mills* and *Allstate*. The Federal Court observed that in *Allstate*, this Court "held that a plaintiff's claim was proper under the MCDCA where he disputed the inclusion of a processing fee on top of the valid underlying debt." *Id.* at 100 (citing *Allstate*, *supra*, 219 Md. App. at 591). The Court further observed that in *Mills* we "suggested that the levying of fines not authorized by the contract governing the underlying debt might constitute a violation of the MCDCA." *Id.* (citing *Mills*, *supra*, 239 Md. App. at 679). As we explained above, in both *Mills* and *Allstate*, the creditors sought to collect fees that they did not have the *right* to collect at all. In the instant case, Appellees clearly had a right to collect pre-judgment and post-judgment interest. The parties, however, disagreed on the amount of the interest. Blibaum and Peak were incorrect in their legal assessment of the amount they were entitled to collect. After certification of this legal question from the District Court, the Court of Appeals issued a comprehensive opinion holding the proper rate of post-judgment interest is 6%. In our view, the parties' legal disagreement --that was ultimately resolved by the Court of Appeals -- does not result in a cognizable claim under the MCDCA.

10

**B. Using wage garnishment to collect the filing fee for a writ of garnishment does not constitute a violation of the MCDCA § 14-202(8).**

Appellants next contend that Appellees assessed an "unauthorized charge" by including the fee for the filing of a writ of garnishment in the amount they attempted to collect through the garnishments. Appellants argue that the cost of the filing fee for the writ of garnishment was not included in the costs "actually assessed in the cause," as required by CL § 15-605. We, therefore, address whether the Appellants had a right to include the filing fee in the amount it was attempting to collect through garnishing the Appellants' wages.

Generally, Maryland Rule 3-603 provides that "the prevailing party is entitled to the allowance of costs." When a judgment debtor fails to satisfy a judgment, the creditor may garnish their wages, by first filing a writ of garnishment. Pursuant to Maryland Rule 3-646, a "judgment creditor may obtain issuance of a writ of garnishment by filing in the same action in which the judgment was obtained a request that contains (1) the caption of the action, (2) the amount owed under the judgment, (3) the name and last known address of the judgment debtor, and (4) the name and address of the garnishee. Upon filing of the request, the clerk shall issue a writ of garnishment directed to the garnishee together with a blank answer form provided by the clerk." The District Court of Maryland published Form Number DC-CV-065 (Rev. 01/2020), which a creditor utilizes in order to do so. Indeed, Rule 3-303 requires that "[a]s far as practicable, all pleadings shall be prepared on District Court forms prescribed by the Chief Judge of the District Court." The form provides spaces for the creditor to fill in "the amount now due on the judgment." It includes

11

a line for "[t]otal court costs, including this writ." Appellees correctly completed the form and filed it with the district court.

Appellants aver that the collection of the filing fee, however, was contrary to the mandate in CL §15-605, which establishes the duties of a judgment creditor who garnishes a debtor's wages. CL § 15-605(c) requires that "[a]ll payments received by a judgment creditor shall be credited first against the accrued interest on the unpaid balance of the judgment, if any, second upon the principal amount of the judgment, and third upon those attorney's fees and costs actually assessed in the cause." Appellants argue that the post-judgment cost of the writ fee was not "actually assessed" as a cost. We disagree. CL § 15-605(c) refers to the order that a judgment creditor must follow when it receives payments from a garnishee. It does not restrict the types of costs that a creditor is entitled to receive. We, therefore, agree with Appellees that they were entitled to recover the fee for filing the writ of garnishment.

## II. MCPA Claim.

Appellants next contend that Peak violated CL § 13-301(1) because the reports sent to Appellees when it garnished their wages included 10% post-judgment interest and misstated the amount of the court costs. Appellants aver that these reports deceived them into believing that they owed more than what they legally did, and that they suffered an economic loss when their wages were garnished for a greater amount than they legally owed.

Pursuant to CL § 13-303 "[a] person may not engage in any unfair, abusive, or deceptive trade practice . . . in . . . [t]he collection of consumer debts." "Unfair, abusive,

12

or deceptive trade practices include any [f]alse, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers[.]" CL § 13-301. Generally, "any person may bring an action to recover for injury or loss sustained by him as the result of a practice prohibited by [the MCPA]." CL § 13-408. The MCPA is to be "construed and applied liberally to promote its purpose." CL § 13-105. "A consumer bringing a private action under § 13–408 must allege (1) an unfair or deceptive practice or misrepresentation that is (2) relied upon, and (3) causes them actual injury." *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 319 (D. Md. 2014), *aff'd*, 584 F. App'x 135 (4th Cir. 2014) (quoting *Stewart v. Bierman*, 859 F.Supp.2d 754, 768 (D. Md. 2012)).

Appellants contend that the incorrect statements of the amounts owed on their judgments were "deceptive," pursuant to CL § 13-303, because the statements caused them to believe they owed more on their judgments than they did, and that it caused more of their wages to be garnished than should otherwise have been garnished. In response, Appellees observe that Appellants cite to no law where a party has been held liable under the MCPA for asserting a legal position on a novel issue of law that turned out to be incorrect.

Appellants cite *Powell v. Palisades Acquisition XVI, LLC*, 782 F.3d 119 (4th Cir. 2014) in support of their argument that a misstatement of the amount due on a judgment is deceptive and can influence a consumer's decision on what to pay or agree to as a settlement. In *Powell*, a debtor received reports which included incorrect amounts due on a judgment obtained against her, and represented that she had not made any payments

13

toward the judgment, when in fact she had. *Id.* at 127. The report included an award of attorney's fees in the total judgment, but also reflected that the attorney's fees represented a separate amount due. *Id.* at 122. The trial court held that this false misrepresentation did not violate the FDCPA[5] because it was not "material." *Id.* at 126. On appeal, the Fourth Circuit explained the following concerning what communications are actionable under the FDCPA:

> "Whether a communication is false, misleading, or deceptive in violation of § 1692e is determined from the vantage of the 'least sophisticated consumer,'" evaluating how that consumer "would interpret the allegedly offensive language." *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 394–95 (4th Cir.2014). A logical corollary of the least sophisticated consumer test is that false, deceptive, and misleading statements must be *material* to be actionable.
>
> * * *
>
> The materiality requirement limits liability under the FDCPA to genuinely false or misleading statements that "may frustrate a consumer's ability to intelligently choose his or her response." *Donohue*, 592 F.3d at 1034; *see also Hahn,* 557 F.3d at 758("The statute is designed to provide information that helps consumers to choose intelligently ..."). Thus, only misstatements that are important in the sense that they could objectively affect the least sophisticated consumer's decisionmaking are actionable.

---

[5] The Fair Debt Collection Practices Act, 15 U.S.C. § 1692e, is the federal corollary to the MCPA. It provides, in pertinent part that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."

*Id.* The Court concluded that "the least sophisticated consumer who previously believed that she had paid her debt in full could, upon receiving a copy of an assignment of judgment, be led to realize that she did indeed have a debt outstanding." *Id.* Moreover, "when that assignment contained an overstatement in excess of 50 percent, the least sophisticated consumer could be led to decide to pay far more than she otherwise would have paid." *Id.* Accordingly, the Court held that the district court erred in concluding that the misrepresentations were not material.

We are not persuaded by Appellant's reliance on *Powell*. Critically, the reports sent to Appellants did not inaccurately reflect payments that were made toward the satisfaction of the judgments. Further, the reasons for the inflated amounts in *Powell* are distinguishable from the instant case. In *Powell*, the consumer was sent a report that essentially charged attorney's fees twice, which was reflected in the total judgment amount, and listed separately. Here, the Appellants charged the incorrect amount of post-judgment interest based on their interpretation of a novel legal issue. Moreover, we have already determined that Appellees had the right to collect the fee associated with filing the writ of garnishment. Appellants' argument that the court costs were reflected inaccurately because this fee was included, is, therefore, unavailing. Accordingly, we hold that Appellees that cannot be liable under the MCPA for asserting a legal position on a novel issue of law, which turned out to be incorrect. We, therefore, affirm the dismissal of the Appellant's claims pursuant to the MCPA.

III. **The 2018 amendments to the MCDCA, which added 14-202(11), do not apply retroactively.**

In 2018, the Maryland General Assembly amended the MCDCA to include protections for consumers under federal law. Effective October 1, 2018, "[i]n collecting or attempting to collect an alleged debt a collector may not. . . [e]ngage in any conduct that violates §§ 804 through 812 of the Federal Fair Debt Collection Practices Act." CL § 14-202(11). Appellants urge us to apply this provision retroactively and apply it to the conduct of Blibaum.

"Generally, the presumption is that statutes operate prospectively unless there is evidence of a contrary intent." *John Deere Const. & Forestry Co. v. Reliable Tractor, Inc.*, 406 Md. 139, 146 (2008). "This rule of construction is particularly applicable where the statute adversely affects substantive rights, rather than only altering procedural machinery." Id. at 146-47 (quoting *State Farm Mut. Auto. Ins. Co. v. Hearn*, 242 Md. 575, 582 (1966)); *see also Landsman v. Maryland Home Improvement Comm'n*, 154 Md. App. 241, 251 (2003) (quoting *State of Maryland Comm'n on Human Relations v. Amecom Div. of Litton Sys., Inc.,* 278 Md. 120, 123 (1976)) ("'Because of the potential for interference with substantive rights, however, and because of the resulting prejudice against retroactive application,' a statute that affects substantive rights is presumed to operate prospectively.") "Indeed, 'the presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic.'" *Johnson v. Mayor & City Council of Baltimore*, 203 Md. App. 673, 693–94 (2012), *aff'd*, 430 Md. 368 (2013) (quoting *Landgraf v. USI Film Products*, 511 U.S. 244, 265 (1994)).

Moreover, "pursuant to Maryland law, a proper retroactive application of a statute requires a two part analysis: first, a determination that the legislature clearly

16

intended the statute to apply retroactively, and second, a determination that retroactive application does not "impair vested rights, deny due process, or violate the prohibition against *ex post facto* laws." *John Deere*, *supra*, 406 Md. at 145-46 (quoting *Allstate Ins. Co. v. Kim*, 376 Md. 276, 289 (2003)). The Court of Appeals has noted that "'[r]etroactivity, even where permissible, is not favored and is not found, except upon the plainest mandate in the act.'" *Id.* at 146 (quoting *State Farm Mut. Auto. Ins. Co.*, *supra*, 242 Md. at 582).

Appellants focus their argument on the second part of the analysis, that is, whether retroactive application would impair any rights, deny due process, or violate the prohibition against *ex post facto* laws. *John Deere*, *supra*, 406 Md. at 145–46. Indeed, however, we must first "determine whether the Legislature intended the statute to have the kind of retroactive effect that is asserted." *Allstate*, *supra*, 376 Md. at 289. In determining legislative intent, we begin with the plain meaning of the statutory language. If the intent is clear from that language, there is no need to search further." *Id*. at 290. But, "[i]f the intent for which we search cannot be gleaned from the statutory language alone, we may, and often must, look for evidence of intent from legislative history or other sources." *Id.*

The 2018 Amendments affect a substantive right because the Amendments afford consumers a new cause of action under Maryland law. Critically, there is no indication that the legislature intended for the MCPA Amendments to be applied retroactively. The MCPA does not contain any express language which indicates an intent to apply the Amendment retroactively. Moreover, the parties have not cited, nor have we found, any

legislative history that supports retroactive application. Accordingly, inasmuch as there is

no clear legislative mandate to apply the statute retroactively, we refuse to do so.

**IV. The trial court was not obligated to grant a hearing for the second motion for class certification and did not abuse its discretion in denying Appellant's motion for class certification.**

Appellants further argue that the Circuit Court for Baltimore City erred in denying

their second motion for class certification without a hearing. "The Maryland Rules allow

for an action to be litigated as a class action when there are questions of law or fact common

to a group of potential litigants who are too numerous to be joined as parties to the action."

*Frazier v. Castle Ford, Ltd.*, 430 Md. 144, 152–53 (2013). Maryland Rule 2-231 governs

class action litigation and provides in pertinent part:

> (b) Prerequisites to a Class Action. One or more members of a plaintiff class may sue as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims of the representative parties are typical of the claims of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
>
> []
>
> (c) Class Actions Maintainable. Unless justice requires otherwise, an action may be maintained as a class action if the prerequisites of section (b) are satisfied, and in addition:
>
> (1) the prosecution of separate actions by individual members of the class would create a risk of (A) inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct for the party opposing the class, or (B) adjudications with respect to individual members of the class that would as a practical matter be dispositive of the interests of the other members not parties

18

to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution of separate actions, (B) the extent and nature of any litigation concerning the controversy already commenced by members of the class, (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum, (D) the difficulties likely to be encountered in the management of a class action.

(d) Certification. On motion of any party or on the court's own initiative, the court shall determine by order as soon as practicable after commencement of the action whether it is to be maintained as a class action. A hearing shall be granted if requested by any party. The order shall include the court's findings and reasons for certifying or refusing to certify the action as a class action. The order may be conditional and may be altered or amended before the decision on the merits.

Rule 2–231(b) "presents four threshold requirements: numerosity, commonality, typicality, and adequacy of representation. These requirements are necessary but not alone sufficient; a putative class also must fall into one of three subcategories of Rule 2–231[c]."[6] *Creveling*

---

[6] Maryland Rule 2-231 was amended in 2019 to provide that "[o]nly plaintiff classes may be named in an action and certified by the court. Defendant classes shall not be named or certified." This was added as subsection (a) of the Rule. The four prerequisites of a class action are now codified at Rule 2-231(b). The subcategories that a class must fall into at least one of are now codified at Rule 2-231(c).

*v. Gov't Employees Ins. Co.*, 376 Md. 72, 88 (2003). "The party seeking class certification bears the burden of proving that all of the Rule's requirements have been satisfied." *Id.* at 88-89. In deciding whether to certify a class, "a trial court should accept a plaintiff's allegations as true, but may look beyond the pleadings to determine whether class certification is appropriate." *Id.* at 89 (citations omitted).

The Court of Appeals has articulated the following standard for reviewing the grant or denial of class certification:

> We ordinarily review a [Circuit Court's] decision regarding whether to certify a class action for an abuse of discretion." *Creveling v. Gov't Employees Ins. Co.*, 376 Md. 72, 90, 828 A.2d 229, 239 (2003). "[T]he basis of the certification inquiry is essentially a factual one, and thus, deference is due." *Id.*, 828 A.2d at 240. Our standard of review for determining whether a Circuit Court used a correct legal standard in determining whether to grant or deny class certification is *de novo. Philip Morris, Inc. v. Angeletti*, 358 Md. 689, 726, 752 A.2d 200, 220 (2000).

*Anne Arundel Cty. v. Halle Dev., Inc.*, 408 Md. 539, 569 (2009). Moreover, "[i]mplicit in this standard is a recognition that the basis of the certification inquiry is essentially a factual one, and thus, deference is due." *Creveling*, *supra*, 376 Md. at 90.

Appellants filed two motions for class certifications. Appellant's first motion for class certification was denied following a hearing. Their second motion for class certification was denied without a hearing. Appellants argue that they were entitled to a hearing on their second motion for class certification. We disagree.

20

Pursuant to Maryland Rule 2-231(d), "[a] hearing shall be granted if requested by any party" when seeking class certification. Critically, the trial court held an extensive hearing on Appellants' first motion for class certification. Appellants made a tactical decision to file the first motion for class certification prior to discovery. Appellants argue, however, that subsequent to taking the deposition of Gary Blibaum, Esquire, as the corporate designee of Blibaum, many of the circuit court's concerns were addressed. The circuit court, in its discretion, disagreed, and denied their second motion without a hearing. We disagree that Appellants are entitled to a hearing each time they file the same motion. Further, Appellants cite no authority in support of their contention that they are entitled to multiple hearings on each of their motions for class certification.

We next turn to the circuit court's basis for denying Appellant's second motion for class certification. In denying Appellants' second motion for class certification, the circuit court noted that it was "not persuaded to alter or amend the order denying class certification dated September 17, 2018." In light of our holding that the circuit court did not err in denying the second motion without holding a hearing, we necessarily need to review the reasons set forth by the circuit court in its denial denying the first motion for class certification.

When Appellants filed their first motion for class certification, the only remaining claim was Appellants' claim for unjust enrichment. A hearing was held on August 10, 2018, in which Appellant Moore designated three class representatives, Larry Chavis, Albert Grantham, and Patricia Grantham. Moore defined the class as "[a]ll natural persons against whom Peak Management LLC obtained a judgment that was not satisfied prior to

21

January 4, 2014 in a lawsuit brought in Maryland by Blibaum & Associates, LLC on behalf of Peak Management LLC *and who have since satisfied that judgment*."[7]  Moore did not identify or include any persons who may be excluded from the class.  In support of its motion for class certification, Appellants relied heavily on a spreadsheet of 160 lawsuits by Blibaum, on behalf of Peak, in which a judgment was entered in favor of Peak and satisfied after January 4, 2014.

The circuit court concluded that Appellants did not satisfy several of the requirements necessary for class certification.  First, it found that the class definition did not sufficiently address the issues in question or readily identify the members of the class.  The court concluded that it would have to conduct mini-trials to determine whether the judgments were ones where Peak charged a 10% post-judgment interest rate or whether the judgment was a money judgment for the rent of a residential lease. The classes were, therefore, not identifiable and ascertainable.  Similarly, the circuit court found that the prerequisite of numerosity was not satisfied because the class definition was deficient and it could not ascertain who would be included in the class.  The court further found that the typicality requirement was also not satisfied based on the definition of the class.  It reasoned that the spreadsheet failed to demonstrate that all or any of the putative class members were charged 10% post-judgment interest; that the persons actually satisfied their judgments by paying more than a 6% interest rate; or that any of the 160 persons had money judgments

---

[7] The italicized text reflects an amendment made to the class definition during the hearing.

against them for unpaid rent and other damages which would entitle them to a 6% post-judgment interest rate.

The circuit court further found that Appellants failed to satisfy the requirement of class certification regarding the adequacy of the class representative. In doing so, the circuit court recognized that the typicality and adequacy requirements are often intertwined. It found that Appellants had offered no evidence to suggest that the class representatives had knowledge of the case or were interested in pursuing the matter and taking on the duties as class representatives. Relying on *Cutler v. Wal-Mart Stores, Inc.*, 175 Md. App. 177, 180, 196 (2007), the court also found that unjust enrichment claims could not be determined on a class wide basis. Indeed, the trial court concluded that there would need to be individual assessments of whether or not any benefit was conferred and accepted, retained, or even known to the defendant.

The circuit court reviewed each of the requirements for class certification and did not abuse its discretion in denying Appellant's first motion for class certification. The record demonstrates that many of the requirements necessary for class certification were not satisfied because the class definition was deficient. Moreover, based upon the information presented to the circuit court at the time, it was impossible to ascertain whether the proposed class members were actually charged the incorrect amount of interest, whether the judgments obtained against them were for unpaid rent, and whether they

23

satisfied those judgments based on an incorrect interest rate.[8]  We, therefore, affirm the

circuit court's denial of class certification.

**V.    Appellants are not entitled to attorney's fees because they have not prevailed on their MCDCA or MCPA claims.**

Lastly, Appellants argue that Blibaum is not exempt from paying attorney's fees, if

they were to prevail on their MCDCA claims.  Pursuant to CL § 13-408(b) "[a]ny person

who brings an action to recover for injury or loss under this section and who is awarded

damages may also seek, and the court may award, reasonable attorney's fees."  The General

Assembly has provided that a violation of the MCDCA is a *per se* violation of the MCPA.

*See* CL 13-301(14)(iii).  The MCPA, however, does not apply to the professional services

of a lawyer.  CL §13-104.  In light of our holding that the trial court did not err in finding

that Blibaum did not violate the MCDCA or the MCPA, we need not undertake an analysis

of whether § CL 13-408(b) is applicable to Blibaum.[9]

> **JUDGMENTS OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AND THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. COSTS TO BE PAID BY APPELLANTS.**

---

[8] Indeed, Appellants made a tactical decision to file the first motion for class certification prior to discovery.

[9] The Court of Appeals recently affirmed our decision in *Mills*, *supra*, 239 Md. App. 663, and addressed whether the MCPA exemption for the professional services of a lawyer, applies to all services of a lawyer when engaging in a debt collection activity.  *Andrews & Lawrence Prof'l Servs*, *supra*, 467 Md. at 168-69.  The Court held that "in the context of debt collection activity, not all services provided by a lawyer or a law firm fall within the 'professional services' exemption under the CPA."  *Id.* at 168.

24